HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LUREEN SUMMERS,

    Plaintiff,

  v.

NOLL/NORWESCO, LLC,

    Defendant.

CASE NO. C14-5401 RBL

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

[Dkt. #12]

THIS MATTER is before the Court on Defendant Noll/NorWesCo's Motion for Summary Judgment [Dkt. #12]. Opti Staffing Group, a temporary staffing firm, hired Plaintiff Summers as a temporary worker. Opti hired Summers as a "temp-to-hire" candidate: she did not want to remain a temporary worker, but instead hoped to turn a temporary assignment into a permanent, full time job with an Opti client. Defendant NorWesCo, a sheet metal manufacturer in Fife, Washington, was an Opti client. Opti specializes in "temp to hire" assignments.

NorWesCo engaged Opti to locate, screen and provide qualified temporary workers. NorWesCo's agreement with Opti provided that NorWesCo would supervise the workers, and provide safety equipment and training. NorWesCo would control and verify the workers' hours.

ORDER - 1

1  NorWesCo paid Opti the workers' wages, as well as an "upcharge," which covered required
2  industrial insurance premiums, other costs, and a profit.  Opti paid its workers directly.

3  Through Opti, Summers obtained a temporary placement at NorWesCo.  She reported
4  each day directly to NorWesCo, not to Opti, and NorWesCo provided all training, direction,
5  tools, equipment, and supervision of her work.  Opti was not on site and had no control over
6  Summers' day to day work.  On her third day at NorWesCo, Summers was injured.

7  She sued NorWesCo for negligence.  NorWesCo asserts employer's immunity under the
8  Washington Industrial Insurance Act.  *See* RCW 51.04.010.  It argues that under the familiar and
9  well-established two-pronged test—the employer's *control* over the employee, and mutual
10 *consent* to an employment relationship—Summers was NorWesCo's "employee" as a matter of
11 law.  Summers claims that she did not consent to an employment relationship with NorWesCo,
12 and that she was *not* a NorWesCo employee as a matter of law.  She claims she considered
13 herself an Opti employee.  Accordingly, she claims, the workers' compensation bar does not
14 preclude her negligence claim against NorWesCo.

15 Though Summers does not entirely concede the point, it is clear that NorWesCo had the
16 requisite *control* over Summers' job performance to make her its employee.  Opti exercised no
17 meaningful control over her, at all.  Instead, the issue is whether NorWesCo can meet its burden
18 of establishing Summers' *consent* to an employment relationship as a matter of law, where
19 Summers claims subjectively that she did not so consent.

20 **A.  Summary Judgment Standard**

21 Summary judgment is appropriate when, viewing the facts in the light most favorable to
22 the nonmoving party, there is no genuine issue of material fact which would preclude summary
23 judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to
24

summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220. Both parties seek a legal determination on the fundamentally factual question of Summers' status as an employee.

**B. NorWesCo must prove Summers' consent to an employment relationship**.

For purposes of workmen's compensation, an employment relationship exists only when: (1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the employee to this relationship. *Novenson v. Spokane Fabricating and Culvert Co.*, 588 P.2d 1174 (1979). The employer carries the burden of demonstrating that the worker consented to an employment[1] relationship:

> [W]hile an employer may "loan" an employee to another, the borrowing employer will not become an "employer" for purposes of RCW Title 51 unless a *mutual agreement* exists between the loaned servant or "borrowed employee" and the borrowing employer. The **burden of avoiding liability** on the basis of the loaned

---

[1] The "employee" determination is different in the vicarious liability and workers' compensation contexts, because there are "different social values at stake" in each. An early and still persuasive explanation of the difference is outlined in *Fisher v. City of Seattle*, 62 Wn.2d 800, 384 P.2d 852 (1963).

servant doctrine *is on the person claiming it*, the party attempting to gain the benefits of statutory immunity from common law suit.

*Rideau v. Cort Furniture Rental*, 39 P.3d 1006, 1007 (Wash. App. 2002) (bold emphasis added). They even agree on the universe of relevant authority on the subject, though they disagree about how to apply those authorities to the facts of this case.

NorWesCo argues that, despite Summers' claim that she never consented to an employment relationship with it, the facts support that conclusion as a matter of law. It argues that Summers admits she wanted and planned to become a full time NorWesCo employee, and emphasizes that she reported directly to NorWesCo each day. It argues that, in her deposition, she conceded that she consented to at least a *temporary* employment relationship, and any disclaimer of that consent now is not admissible to avoid summary judgment. It claims that these facts distinguish this case from Washington cases holding that the worker's consent to an employment relationship is a factual issue to be determined at trial. Here, it claims, the facts and their effect are not disputed.

In *Novenson*, the Washington Supreme Court held that consent[2] is a factual question. The temporary worker there (Novenson) reported daily to the temp agency (Kelly), and then to the client (Spokane Culvert). Spokane Culvert paid Kelly, and Kelly paid Novenson. Like Opti

---

[2] NorWesCo points out that the control and consent elements are "inextricably intertwined." *Rideau*, 39 P.3d at 1008. There are at least seven factors relevant to control: control of the work; determining qualifications; pay rate, and hours; payroll; day to day supervision; work equipment; who directs what work to be done; and training. *Id.*; *see also Gary Merlino Construction Co., Inc. v. City of Seattle*, 273 P.3d 1049 (Wash. App. 2012), and *Jones v. Halvorson-Berg*, 847 P.2d 945 (Wash. App 1993) (referencing Restatement (Second) of Agency, §220, comment *h*).

ORDER - 4

in this case, Kelly paid its temporary workers' industrial insurance premiums[3]—a fact that the Supreme Court held was of "no moment." *Novenson*, 588 P.2d at 1176. Novenson was injured, and he sued Spokane Culvert for negligence.

Spokane Culvert asserted the workers' compensation bar, claiming that Novenson was its employee. Novenson claimed that he never consented to an employment relationship. The trial court determined that Novenson was an employee as a matter of law, and the Washington Supreme Court reversed. Even though Novenson had discussed a permanent position with Spokane Culvert, his consent to an employment relationship at the time of the accident was a factual determination to be made by the trier of fact:

> Consent to an employment agreement with Spokane Culvert should not be imputed to Novenson as a matter of law; material factual questions exist regarding the plaintiff's consent to enter a contract of hire. The contractual agreement entered by Kelly and Spokane Culvert mentions no contract between Novenson and Spokane Culvert. As a Kelly day-to-day laborer, Novenson engaged in a conversation with a permanent employee of Spokane Culvert regarding the possibility of employment with the company. The trier of fact at trial is the one to draw any inferences as to Novenson's understanding and consent *vis-a-vis* an employment relationship with Spokane Culvert.

*Novenson*, 588 P.2d at 1177.

In *Rideau*, decided 23 years later, the temporary worker (Rideau) reported daily to the temp agency (ORM), before going to work at ORM's client (Cort Furniture). ORM paid Rideau, withheld his taxes, and paid his industrial insurance premiums. ORM retained the ability to hire and fire its employees, including Rideau, while Cort supervised and directed Rideau's work. Six weeks into his temporary assignment, Rideau was injured in a car accident while on the job,

---

[3] NorWesCo emphasizes that, under Washington law, it was ultimately responsible for these premiums if Opti did not pay them to the Department of Labor and Industries. *See Rafn v. Washington*, 104 Wash.App. 947 (2001).

riding with a permanent Cort employee. He sued Cort for negligence. Cort asserted the workers' compensation bar, claiming that it had the requisite control over him, and that he had consented to an employment relationship. The trial court agreed, and dismissed Rideau's claim on summary judgment. The Court of Appeals reversed, citing *Novenson*:

> With respect to consent, there must be clear evidence of a *mutual agreement* between the employee and employer such that the employee has clearly consented to be the "employee" of the "employer."

*Rideau*, 39 P.3d at 1009.

As Summers emphasizes, the *Rideau* court held that the employee's subjective belief as to the existence of an employer-employee relationship is material to the issue of consent. *Id*. The fact that the temporary worker claims he considered the temp agency to be his "sole employer" *alone* is enough to "raise the question of whether [the worker] consented to the role of 'employee[.]'" *Id*. (emphasis added). In fact, *Rideau* expressed "skepticism" about whether temporary worker clients (like Cort there, and NorWesCo here) "can ever obtain immunity from common law suit under the loaned servant doctrine," though it acknowledged that a bright line rule is properly left to the legislature. *Id*. at 1010.

Against this legal backdrop, it is clear that NorWesCo's battle for immunity as a matter of law is an uphill one. Nevertheless, it claims that it can succeed for at least two reasons that make this case different than the ones cited.

First, citing *Rideau*, NorWesCo suggests that the relevant "consent" is not to an "abstract" notion of "employment," but rather Summers' consent to the relationship in which NorWesCo had the right to exercise physical control over her work. It is perhaps true that *Novenson*'s articulation of the test—"the employee's consent to ***this*** relationship"—could support such a reading. But all other authority makes it clear that the consent required is to a

"mutual employment relationship;" not simply to a relationship in which the client has physical control over the performance of the worker's duties.  If the latter was actually the relevant inquiry, there would presumably be a reported case holding that the temporary worker was the client's employee as a matter law.  But there is not.

NorWesCo's second, and more persuasive argument, is that this case is different because Summers sought and received a "temp to hire" position[4].  She did not want to remain a temporary, Opti employee; she consented to—she *wanted*—a full time position with NorWesCo, and she was "ready for one at any time." [Dkt. # 12 at 5].  NorWesCo argues that this means that Summers also consented to the (temporary) employment relationship she had with it, and that her current claim that she did not is entitled to no weight.

But NorWesCo does not address the possibility that while Summers gladly *would have* mutually consented to an employment relationship, temporary or permanent, she had not done so at the time she was injured.  NorWesCo had not offered her any such position, and she had not accepted one, at that time.

Though it is a close question, it cannot be concluded that, as a matter of law, Summers and NorWesCo had mutually agreed upon an employment relationship at the time she was injured.  For this reason, NorWesCo's motion for summary judgment on this point is DENIED,

---

[4] NorWesCo also points out that Opti's employee handbook, which Summers received and signed, provided that her employment was with "both Opti and our Client."  This is evidence, but it is not conclusive on the issue of consent.

1  and the trier of fact will determine whether she so consented.  Summers' own request for the

2  opposite ruling as a matter of law is similarly DENIED.

3         IT IS SO ORDERED.

4         Dated this 29th day of May, 2015.

6         _____
           RONALD B. LEIGHTON
7          UNITED STATES DISTRICT JUDGE